UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____
                                    )
TINA LOGAN,                         )
                                    )
            Plaintiff,              )
                                    )        12-cv-01058-WGY
            v.                      )
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner,                )
Social Security Administration,     )
                                    )
                                    )
            Defendant.[1]           )
_____ )

WILLIAM G. YOUNG, D.J.[2]                     March 14, 2016

**MEMORANDUM & ORDER**

**I.   INTRODUCTION**

    Tina Logan challenges the decision of the Social Security Administration's Commissioner (the "Commissioner") denying her supplemental security income.  Compl. ¶ 1, ECF No. 1.

---

    [1] Michael J. Astrue, the former Commissioner of the Social Security Administration, was the original named Defendant in this matter.  Compl., ECF No. 1.  On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Docket Annotation, June 28, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d), she has been substituted as the named Defendant.  Fed. R. Civ. P. 25(d).

    [2] Of the District of Massachusetts, sitting by designation. ECF No. 15.

[1]

A.  **Procedural History**

On May 13, 2010 ("the application date"), Logan filed an application for supplemental security income pursuant to Title XVI of the Social Security Act.  Soc. Sec. Admin. R. ("Admin. R.") 20, ECF No. 9.  This application was denied on August 10, 2010.  Id.  On August 16, 2010, Logan filed a written request for a hearing that was held on June 2, 2011.  Id.  The Administrative Law Judge ("hearing officer")[3] decided on August 25, 2011, that Logan was not eligible for supplemental security income.  Id. at 20, 29.  Logan filed a petition with the Appeals Council, which denied her application, id. at 1.

On June 29, 2012, Logan filed a complaint in district court seeking review of the Commissioner's decision.  See Compl.  The administrative record was produced on August 28, 2012, Admin. R., and Logan filed her memorandum of law on October 1, 2012, Pl.'s Mem. Law ("Pl.'s Mem."), ECF No. 13.  The Commissioner filed her reply memorandum on October 22, 2012.  Mem. Law Supp. Comm'r Mot. J. Pleadings ("Def.'s Mem."), ECF. No. 14.  The case was then assigned to this Court.  See Order Reassigning Case, ECF No. 15.

---

[3] For an explanation of this terminology, see Vega v. Colvin, NO. 14-13900-WGY (D. Mass. filed March 2, 2016).

[2]

**B. Relevant Factual History**

Most of the factual discussion of Logan's medical history and the opinions of treating and consulting medical sources is incorporated into the later discussion of the hearing officer's decision. This section only sketches a brief overview of the facts relevant to Logan's claim for disability.

Logan filed her application for supplemental security income when she was 36 years old. Admin. R. 153. In her application, she alleged that she suffered from a learning disability, kidney disease, herniated discs in her back and neck, high blood pressure, asthma, arthritis, depression, hemorrhoids, anxiety and panic attacks. Id. at 158. Logan has a ninth-grade education, id. at 40, and attended both regular education classes and those with a special education component, id. at 43. Logan has been diagnosed as "current[ly] functioning in the mild range of mental retardation[.]" Id. at 407-412. Logan successfully completed home health aide training, however, and has worked as a home health aide for a short time. Id. at 43-44, 159, 179. She has also worked as a cashier. Id. at 45-46, 159, 178.

## II. LEGAL STANDARDS

**A. Standard of Review**

On review, this Court must ensure that "the correct legal standards have been applied" and that "there is substantial

evidence, considering the record as a whole, to support the Commissioner's decision[.]" Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Substantial evidence is "such <u>relevant</u> evidence as a <u>reasonable</u> mind might accept as adequate to support a conclusion." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted).

**B.  Social Security Disability Standard**

For our purposes, an individual is considered disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

There is a five-step analysis for making this determination, 20 C.F.R. § 416.920(a)(4), summarized by the Second Circuit as:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

[4]

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). The claimant has the burden of proving steps one through four and the burden then shifts to the Commissioner at step five. Id.

**III. THE HEARING OFFICER'S DECISION**

The hearing officer applied the five-step sequential analysis in her decision. See Admin. R. 22-29.

At step one, she found that Logan had not engaged in substantial gainful activity since the application date. Id. at 22. At step two, the hearing officer noted that Logan had a "severe combination of impairments: cervical spine nucleus pulposus, obesity, and a learning disorder/borderline intellectual functioning." Id.

At step three, the hearing officer concluded that Logan's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and, more specifically, that the severity of these impairments, "considered singly and in combination," did not satisfy the criteria of listing 12.05 (intellectual disability). Id. (citing 20 C.F.R. Part 404, Subpart P, App. 1). The hearing officer found that the "paragraph C" criteria for listing 12.05 ("12.05(C)")[4] were not met. Id. at 24-25.

---

[4] The specific requirements for listing 12.05(c) are discussed infra section IV-A.

At step four, the hearing officer determined that Logan had the residual functional capacity ("RFC") "to perform light work . . . [but is mentally] limited to simple one or two step tasks which are not complex and do not require complex decision-making [nor] where she would be required to supervise others". Id. In particular, the hearing officer referred to medical evidence, including the opinion of Dr. Roberto Rivera, M.D. ("Dr. Rivera"), who examined Logan in June 2010, id. at 27. The hearing officer also considered the opinion of Dr. Jeanne Shapiro, Ph.D ("Dr. Shapiro"), who conducted a psychiatric examination in June 2010, id. at 27, 339-343, and an intelligence evaluation in June 2011, id. at 27, 407-412, 413-415.

At step five, the hearing officer found that there were jobs that exist in significant numbers in the national economy that the claimant could perform. Id. at 28.

**IV. ANALYSIS**

Logan challenges the hearing officer's decision on four grounds: first that the hearing officer erred by failing to find that her symptoms met listing 12.05(C)'s requirements; second, that the RFC finding is not supported by substantial evidence; third, that the hearing officer failed to apply the appropriate standards in assessing Logan's credibility; and fourth, that no substantial evidence supports the hearing officer's

determination at step five.  See Def.'s Mem. 1.  While the Court finds her first argument unconvincing, Logan's second argument persuades the Court that the hearing officer's RFC determination was infected with legal error, warranting a remand, and thus the Court need not entertain her subsequent arguments.[5]

   **A.   Listing 12.05(C)**

Logan first argues that the hearing officer erred by failing to find that her conditions satisfy listing 12.05(C). See Pl.'s Mem. 11-14.  The Commissioner disputes this point. See Def.'s Mem. 6-10.  The Court agrees with the Commissioner.

To meet listing 12.05(C), Logan must show that she has a "valid, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.05(C) (emphasis supplied).  Even assuming the IQ requirement is satisfied here, Logan has failed to satisfy 12.05(C)'s second requirement, as explained below.

---

[5] Despite holding her second argument sufficient to warrant remand, the Court nonetheless details why it finds her first argument unpersuasive.  It does so because Logan's first argument logically precedes her second: her first relates to an earlier step in the disability-analysis framework.  Compare Admin. R. 24 (describing step three analysis) with id. at 25-28 (describing step four analysis).

[7]

Despite Logan's cognitive limitations,[6] Dr. Shapiro reported Logan to be capable of "understanding and following simple instructions and directions," performing "simple and perhaps some complex tasks with supervision and independently," maintaining "attention and concentration for tasks," "learning some tasks," "making some appropriate decisions" and "dealing with some stress."  Admin. R. 342, 412.[7]  Logan took a five to

---

[6] Logan has a ninth-grade education and attended special education classes at school for "speech, occupational therapy, reading and math."  Admin. R. 42-43, 159.  Dr. Shapiro noted in June 2010 that Logan's cognitive functioning is "in the deficient range" and in June 2011 that her writing and arithmetic capabilities are "below an age appropriate level."  Admin. R. 411.  She also evaluated Logan's reading at "an age appropriate level or slightly below."  Id.

[7] Regarding Logan's communication skills, Dr. Shapiro reported Logan's eye contact to be appropriately focused and her speech and language skills to be adequate and intelligible during the examinations.  Admin. R. 341, 409.  Logan spoke well and answered with normal vocabulary during the hearing, id. at 35-74, and she reported that she communicated with her children via phone calls and text messages, id. at 51-52.  For these reasons, Logan has not shown deficits in communication skills.
Furthermore, although Logan does not like crowds and does not get along well with family, Admin. R. 54, 411, there is substantial evidence to support the conclusion of the hearing officer that Logan has no sufficient deficits as to social skills and leisure since she does "some limited shopping", "socializ[es] with friends", "go[es] out for ice cream", "take[s] public transportation", "watch[es] television," and "play[s] games on her phone," id. at 342, 411.
Moreover, Logan stated in Dr. Shapiro's reports that she does "chores" and is "able to dress, bathe, and groom herself."  Id. at 342, 411.  Even if she indicated in June 2010 and during the hearing that she needed help at times to cook, prepare food, clean and do laundry, id. at 52-53, 342, 411, there is substantial evidence to support the conclusion of the hearing officer that Logan does not have deficits in self-care.

six month class around 2001 to qualify as a health aide, passed the examination, and subsequently registered and worked part-time in 2005 for 12 months. Id. at 43-44, 339, 407. She also worked as a cashier in the fall of 2001 and June of 2004, id. at 45, 159.

In short, the hearing officer's conclusion that Logan does not qualify under Listing 12.05(C) was supported by substantial evidence.[8]

B. **Residual Functional Capacity Finding**

Logan next objects to the hearing officer's determination of her RFC. See Pl.'s Mem. 14-16. The hearing officer stated that Logan has the RFC[9] to perform light work and is mentally limited to simple tasks. Admin. R. 25. As will be explained below, Logan's objections have merit.

---

[8] Dr. Shapiro did note that Logan "may find it difficult" to attend to a routine and maintain a schedule because she does not drive and cannot take the bus if it is too crowded." can only take the bus if it is not too crowded[,]" Admin. R. 342, 412. According to Logan, however, the reasons she stopped working as a health aide and a cashier -- the physical pain and the lack of scheduled hours, id. at 45-46 -- are unrelated to her mental limitations.

[9] RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Cichocki v. Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (citing SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)).

[9]

### 1. Reconciliation of Opinions of Consultative Examiners

Logan's first RFC-based challenge is that the hearing officer "failed to reconcile her RFC with [certain] findings of [her] consultative examiners, Dr. Shapiro and Dr. Rivera[.]" Pl.'s Mem. 14. She points specifically to three of Dr. Shapiro's and Dr. Rivera's recommendations. See Def.'s Mem. 16. Two of these are not inconsistent with the hearing officer's RFC limitation of Logan to light work.[10] The third -- Dr. Shapiro's recommendation that Logan avoid "exposure to smoke, dust, and

---

[10] First is Dr. Rivera's determination that Logan has "mild to moderate limitations to carrying of heavy objects," "moderate limitations to pushing and pulling of heavy objects[,]" and "mild limitations to twisting and turning of the neck." Pl.'s Mem. 16 (citing Admin. R. 349). These limitations, in the context of Dr. Rivera's full report -- which also observed that Logan has "a normal stance, use[s] no assistive devices," that her motion is "full in her shoulders, elbows, knees, forearms, and wrists," that she has "no muscle atrophy," as well as good grip strength and finger dexterity, Admin. R. 27 -- do not contradict the hearing officer's determination that Logan was capable of performing light work, which is "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).
   Second is Dr. Shapiro's opinion that Logan "may find it difficult to attend to a routine and maintain a schedule[.]" Pl.'s Mem. 16 (quoting Admin. R. 342, 412). The hearing officer, in her role as fact-finder, was entitled to adopt one of two arguably inconsistent statements by Dr. Shapiro: in his opinion of June 2010, Dr. Shapiro did not find such limitations and concluded, on the other hand, that Logan "can regularly attend to a routine and maintain a schedule." Admin. R. 342. In June 2011, however, Dr. Shapiro found that Logan's difficulties "may" exist because the claimant "does not drive and can only take the bus if it is not too crowded[.]" Id. at 412.

other known respiratory irritants[,]" Admin. R. 349 -- was not reconciled by the hearing officer, and that was error.[11]

The Commissioner points to a Social Security Policy Statement that provides that "[e]nvironmental restrictions, such as the need to avoid exposure to feathers, would . . . not significantly affect the potential unskilled light occupational base." SSR 83-14, 1983 WL 31254 (Feb. 26, 1979). Therefore, the Commissioner argues, any failure of the hearing officer to consider Logan's non-exertional limitations was effectively harmless error. See Def.'s Mem. 14. While this might present a close issue were this error isolated,[12] because the Court finds that the hearing officer's RFC determination is marred for another reason, see infra, on remand Logan's environmental limitations should be considered, too.

---

[11] Logan is correct that "[t]he RFC assessment must be based on all of the relevant evidence in the case record[.]" SSR 96-8P, 1996 WL 374184 (July 2, 1996). This includes evidence relating to environmental limitations. See id. at *6 (discussing non-exertional capacity, which "considers the ability to tolerate various environmental factors").

[12] Logan identified non-binding authority that supports her position. See Charles v. Astrue, 854 F. Supp. 2d 22, 29 (D.D.C. 2012) (remanding where the hearing officer, without explanation, imposed a limitation in claimant's RFC to "avoid excessive dusts, fumes, chemicals, poor ventilation, humidity, or wetness" where a physician recommended limiting "all" such exposure).

## 2.    The Physician Assistant's Opinion

In challenging the hearing officer's RFC determination, Logan argues next that the hearing officer's treatment of the opinion of Vincent Gemelli ("Gemelli"), physician assistant, was in error.  Pl.'s Mem. 16-19.  Her argument is compelling.

Gemelli suggested much stricter restrictions than either Dr. Shapiro and Dr. Rivera, with Logan only able to sit for 45 minutes at a time, stand for 20 minutes, and, in total, stand or sit for less than 2 hours in an 8-hour workday.  Admin. R. 383. Gemelli indicated that Logan could not work, id., because in Gemelli's opinion, Logan was "unable to meet competitive standards" regarding "[u]nderstand[ing] and remember[ing] very short and simple instructions," working with others, and dealing with stress.  Id. at 384.

The hearing officer stated in her decision that Gemelli's opinion, "taken into consideration in light of the other evidence of record, was not assigned any weight, as a physician assistant is not an acceptable medical source."  Id. at 27. This perfunctory treatment of the opinion of a treating physician's assistant was improper: although not formally an "acceptable medical source," courts in this district have stated that hearing officers are required to employ the same factors for evaluating this opinion as though it were.  See Saxon v. Astrue, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) ("In weighing

the opinions of 'other sources', the [hearing officer] must use the same factors for the evaluation of the opinions from 'acceptable medical sources[.]'") (citing Canales v. Comm'r of Soc. Sec., 698 F.Supp.2d 335, 344 (E.D.N.Y. 2010)). While the Court is unpersuaded that a hearing officer must consider all the treating-physician factors when the opinion at issue is from a non-acceptable-medical-source, a 2006 Social Security Ruling seems to prohibit the type of per se rejection that occurred here:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03P, 2006 WL 2329939 at *3 (S.S.A. Aug. 9, 2006).

Again, the Court must ask: does this error merit remand? The Commissioner, anticipating this question, points to the differences between Gemelli's opinion and that of the two physicians whose statements the hearing officer accorded "great weight." Admin. R. 27. They are starkly different; most simply, in Gemelli's opinion, Logan is incapable of work in a competitive environment, id. at 384, while that is not true for

the others' opinions, id. at 27.  The Commissioner's argument, apparently relying on harmless-error doctrine, ignores the language of the hearing officer's decision, which strongly implies causation between Gemelli's being a physician assistant and the rejection of his opinion: again, the hearing officer asserted that Gemelli's opinion "was not assigned any weight, <u>as a physician[] assistant is not an acceptable medical source</u>." Id. at 27 (emphasis supplied).  Since this was legal error, a remand is necessary so that the hearing officer can weigh these competing opinions on their merits, as the regulations, binding on her,[13] require.

## V. CONCLUSION

For the aforementioned reasons, the decision of the Commissioner is REMANDED for proceedings consistent with this opinion.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
U.S. DISTRICT JUDGE

---

[13] "We publish Social Security Rulings in the Federal Register under the authority of the Commissioner of Social Security.  They are binding on all components of the Social Security Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."  20 C.F.R. § 402.35.